FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

**FILED**

OCT 1 6 2023

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

**UNITED STATES** *ex rel.* Patricia Lesko,

    *Plaintiffs,*

    v.

No. 23

1:23 CV 02033

1. **DENVER CENTER FOR THE PERFORMING ARTS;**
2. **COLORADO MUSEUM OR NATURAL HISTORY;**
3. **DENVER ART MUSEUM;**
4. **LOUISIANA COLLEGE;**
5. **TRUSTEES OF BOSTON UNIVERSITY;**
6. **BOSTON BALLET, INC. (SECOND DRAW);**
7. **NICHOLS COLLEGE;**
8. **STEPHENS COLLEGE;**
9. **STEPHENS COLLEGE (SECOND DRAW);**
10. **WESTMINSTER COLLEGE (SECOND DRAW);**
11. **SAINT LOUIS SYMPHONY ORCHESTRA (SECOND ROUND);**
12. **ROCKHURST UNIVERSITY;**
13. **FRANCISCAN UNIVERSITY OF STEUBENVILLE;**
14. **ZOOLOGICAL SOCIETY OF CINCINNATI;**
15. **THE CLEVELAND INSTITUTE OF MUSIC (SECOND DRAW);**
16. **THE MUSICAL ARTS ASSOCIATION (SECOND DRAW);**
17. **WILMINGTON COLLEGE;**
18. **HEBREW ACADEMY OF CLEVELAND;**
19. **MUSKINGHAM UNIVERSITY;**
20. **PLAYHOUSE SQUARE FOUNDATION;**
21. **PLAYHOUSE SQUARE FOUNDATION (SECOND DRAW);**
22. **AUSTIN COLLEGE;**
23. **FORT WORTH SYMPHONY ORCHESTRA ASSOCIATION;**
24. **LIONHEART CHILDREN'S ACADEMY;**
25. **DALLAS SYMPHONY ASSOCIATION,**

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

**DO NOT PLACE ON PUBLIC DOCKET**

**JURY TRIAL DEMANDED**

# JUDGE BARKER

# MAG. JUDGE PARKER

A.P.R. 10/16/2023 Paid @ 402.00 Receipt # 148116

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

|  | INC. (SECOND DRAW); |
| --- | --- |
| 26. | **HOUSTON SYMPHONY SOCIETY (SECOND DRAW);** |
| 27. | **HOUSTON BAPTIST UNIVERSITY;** |
| 28. | **EAST TEXAS BAPTIST UNIVERSITY;** |
| 29. | **PARKER UNIVERSITY;** |
| 30. | **DALLAS THEOLOGICAL SEM** |

*Defendants.*

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff and *qui tam* Relator Patricia Lesko, by and through her undersigned counsel

Thomas F. Wieder, alleges of personal knowledge as to her own observations and actions, and on

information and belief as to all else, as follows:

### I.
### PRELIMINARY STATEMENT

31.     In 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security

Act, Pub. L. No. 116-136, § 1102, 134 Stat. 286-294 (2020) (the "CARES Act"), to aid

businesses struggling during the COVID-19 pandemic. The CARES Act included the Paycheck

Protection Program ("PPP"), which enabled the federal government, through the Small Business

Administration ("SBA"), to guarantee emergency loans to small businesses facing pandemic-

related difficulties.

32.     As of January 8, 2021, the Paycheck Protection Program had in its first round

provided "5.2 million loans worth $525 billion to America's small businesses, supporting more

than 51 million jobs," according to Treasury Secretary Steven T. Mnuchin.[1]

---

[1] Press release, *available at* https://home.treasury.gov/news/press-releases/sm1230 (last accessed April 18, 2023).

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

33.     Businesses that exceeded the SBA's established or "alternative" size standards for their industry[2] were not eligible for first-draw PPP loans. Businesses with 500 or more employees were not eligible for first-draw PPP loans, regardless of whether they otherwise met the SBA size standards.

34.     All Defendants named herein applied for and received first-draw PPP loans. All of these loans which were later forgiven, except for the loan to Defendant Ranken Technical College.

35.     Defendants Boston Ballet, Inc., Stephens College, Westminster College, Saint Louis Symphony Orchestra, The Cleveland Institute of Music, The Musical Arts Association and Playhouse Square Foundation also received second-draw loans, which were later forgiven.

36.     Each Defendant had more than 500 employees *and* exceeded the SBA's size standards for its respective industry, as well as the SBA's "alternative size standards."

37.     Each Defendant therefore did not qualify as "a small business concern," and so was not eligible for the PPP loans it received.

38.     All Defendants therefore obtained money from the federal government to which they were not entitled, by presenting or causing to be presented false claims to the SBA.

39.     Together, the loans to the non-profits named here resulted in payments to these entities of $97,820,487, and payment to the lenders of $96,519,913.

---

[2] For the "established" size standards, *see* https://proxy.www.sba.gov/document/support-table-size-standards (last accessed April 13, 2023); *see also* 13 C.F.R. § 121.201. A business could also qualify for a PPP loan if it met both tests in SBA's "alternative size standard" as of March 27, 2020: (1) a maximum tangible net worth of not more than $15 million; and (2) average net income after federal income taxes (excluding any carry-over losses) for the two full fiscal years before the date of the application of not more than $5 million. *See* Paycheck Protection Program Loans Frequently Asked Questions (FAQs) (as of June 25, 2020), answer to Question 2, *available at* https://www.sba.gov/sites/default/files/2020-06/Paycheck-Protection-Program-Frequently-Asked-Questions%20062520-508.pdf (last accessed April 19, 2023).

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

40. Relator brings this action on behalf of the United States for Defendants' violations of the federal False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (the "FCA").

41. This Complaint is filed *in camera* and under seal pursuant to 31 U.S.C. § 3730(b)(2). A copy of this Complaint, along with written disclosure of substantially all material evidence and information that Relator possesses, was served on the Attorney General of the United States and the United States Attorney for the Eastern District of Michigan, pursuant to 31 U.S.C. § 3730(b)(2).

## II.
## JURISDICTION AND VENUE

42. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action is brought for violations of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, a federal statute.

43. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b)(2), because at least one Defendant can be found in, and transacts or has transacted business in, this District.

44. This Complaint was filed within the period prescribed by 31 U.S.C. § 3731(b).

## III.
## NO PUBLIC DISCLOSURE;
## DIRECT AND INDEPENDENT KNOWLEDGE
## OF VIOLATIONS OF THE FALSE CLAIMS ACT

45. To the best of Relator's knowledge and belief, there has been no public disclosure, relevant under 31 U.S.C. § 3730(e), of the "allegations or transactions" in this Complaint. Relator makes the allegations in this Complaint based on her own direct and independent knowledge, experience and observations.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

## IV.
## THE PARTIES

46.     Relator brings this action on behalf of Plaintiff the United States. At all times relevant to this Complaint, the United States, through the Small Business Administration, guaranteed the loans provided to Defendants via the PPP. The United States also paid Defendants' lenders to forgive the loans.

47.     Relator Patricia Lesko is a resident of the State of Michigan. She is an award-winning independent investigative reporter who has worked to expose fraud and corruption for over 14 years. In 2021, Relator began investigating aspects of Defendants' business practices. She spent hundreds of hours reviewing thousands of pages of documents.

48.     Denver Center for the Performing Arts is a 501(c)(3) not-for-profit organization located in Denver, Colorado.

49.     Colorado Museum of Natural History is a 501(c)(3) not-for-profit organization located in Denver, Colorado.

50.     Denver Art Museum is a 501(c)(3) not-for-profit organization located in Denver, Colorado.

51.     Louisiana College is a 501(c)(3) not-for-profit organization located in Pineville, Louisiana.

52.     Trustees of Boston University is a 501(c)(3) not-for-profit organization located in Boston, Massachusetts.

53.     Boston Ballet, Inc. (Second Draw) is a 501(c)(3) not-for-profit organization located in Boston, Massachusetts.

54.     Nichols College is a 501(c)(3) not-for-profit organization located in Dudley, Massachusetts.

55.     Stephens College is a 501(c)(3) not-for-profit organization located in Columbia, Missouri.

56.     Stephens College (Second Draw) is a 501(c)(3) not-for-profit organization located in Columbia, Missouri.

57.     Westminster College is a 501(c)(3) not-for-profit organization located in Fulton, Missouri.

58.     Saint Louis Symphony Orchestra (Second Draw) is a 501(c)(3) not-for-profit organization located in St. Louis, Missouri.

59.     Rockhurst University is a 501(c)(3) not-for-profit organization located in Kansas City, Missouri.

60.     Franciscan University of Steubenville is a 501(c)(3) not-for-profit organization located in Steubenville, Ohio.

61.     Zoological Society of Cincinnati is a 501(c)(3) not-for-profit organization located in Cincinnati, Ohio.

62.     The Cleveland Institute of Music (Second Draw) is a 501(c)(3) not-for-profit organization located in Cleveland, Ohio.

63.     The Musical Arts Association (Second Draw) is a 501(c)(3) not-for-profit organization located in Cleveland, Ohio.

64.     Wilmington College is a 501(c)(3) not-for-profit organization located in Wilmington, Ohio.

65.     Hebrew Academy of Cleveland is a 501(c)(3) not-for-profit organization located in Cleveland Heights, Ohio.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

66.     Muskingum University is a 501(c)(3) not-for-profit organization located in New Concord, Ohio.

67.     Playhouse Square Foundation is a 501(c)(3) not-for-profit organization located in Cleveland, Ohio.

68.     Playhouse Square Foundation (Second Draw) is a 501(c)(3) not-for-profit organization located in Cleveland, Ohio.

69.     Austin College is a 501(c)(3) not-for-profit organization located in Sherman, Texas.

70.     Fort Worth Symphony Orchestra Association (Second Draw) is a 501(c)(3) not-for-profit organization located in Fort, Texas.

71.     Lionheart Children's Academy is a 501(c)(3) not-for-profit organization located in Bedford, Texas.

72.     Dallas Symphony Orchestra Association (Second Draw) is a 501(c)(3) not-for-profit organization located in Dallas, Texas.

73.     Houston Symphony Society is a 501(c)(3) not-for-profit organization located in Houston, Texas.

74.     Houston Baptist University is a 501(c)(3) not-for-profit organization located in Houston, Texas.

75.     East Texas Baptist University is a 501(c)(3) not-for-profit organization located in Marshall, Texas.

76.     Parker University is a 501(c)(3) not-for-profit organization located in Dallas, Texas.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

77.     Dallas Theological Seminary is a 501(c)(3) not-for-profit organization located in Dallas, Texas.

## V.
## THE LEGAL FRAMEWORK

**A.     The CARES Act and the Paycheck Protection Program ("PPP")**

78.     The CARES Act, *inter alia*, empowered the SBA to guarantee loans made by private lenders to eligible small businesses under the Paycheck Protection Program.

79.     The PPP was "designed to provide a direct incentive for small businesses to keep their workers on payroll."[3] PPP loans were intended to be used to help fund payroll costs, including benefits; mortgage interest, rent, and utilities; and certain other costs of business operations.

80.     Private lenders who were authorized to participate in the PPP processed loan applications and funded approved loans using their own monies, which in turn were 100% guaranteed by the SBA.

81.     As pertinent here, a business was eligible to receive a first-draw PPP loan if it:

    a.  Employed not more than 500 employees;

    b.  Did not exceed the size standard established for its industry by the SBA;[4] or

    c.  Met both tests in SBA's "alternative size standard" as of March 27, 2020: (1) a maximum tangible net worth of not more than $15 million; and (2) average net income after federal income taxes (excluding any carry-over losses) for the two full fiscal years before the date of the application of not more than $5 million.

*See* 15 U.S.C. § 636(a)(36)(D); PPP FAQ, answer to Question 5;[5] *id.*, answer to Question 2.

---

[3] https://tinyurl.com/PPP-purpose (last accessed Mar. 9, 2023).

[4] *See* https://proxy.www.sba.gov/document/support-table-size-standards (last accessed April 13, 2023); *see also* 13 C.F.R. § 121.201.

[5] *Available at* https://www.sba.gov/sites/default/files/2020-06/Paycheck-Protection-Program-Frequently-Asked-Questions%20062520-508.pdf (last accessed April 19, 2023).

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

82.     As pertinent here, the maximum PPP loan award was the lesser of (a) $10,000,000, or (b) 2.5 times the average payroll costs incurred by the applicant during the 1-year period before the date on which the loan was made, plus any outstanding amount of any Economic Injury Disaster Loan that the borrower was seeking to refinance.[6] *See* 15 U.S.C. § 636(a)(36)(E).

83.     "Payroll costs" were defined to include "salary, wage, commission, or similar compensation" for employees residing in the United States. 15 U.S.C. § 636(a)(36)(A)(viii).

84.     Borrowers were eligible for full forgiveness of their PPP loans if, during the 8- to 24-week period following loan disbursement: (a) employee and compensation levels were maintained; and (b) loan proceeds were spent on payroll costs and other eligible expenses; with (c) at least 60% of the loan proceeds being spent on payroll costs.[7]

**B.     PPP Loan Certifications**

85.     To receive a PPP loan, a borrower was required to first complete the Borrower Application Form (the "Application").[8]

86.     The Application required the borrower to certify, *inter alia*, that it was "eligible to receive a loan" under the PPP, and that it would use loan proceeds consistent with the PPP rules in effect at the time of application. *Id.*, at 2.

87.     Applicants were also required to initial the following statements:

> The funds will be used to retain workers and maintain payroll [or other authorized purposes] as specified under the Paycheck Protection Program Rules; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

---

[6] The EIDL program provided up to $2 million to small businesses experiencing temporary loss of revenue due to COVID-19. That program is not implicated here.

[7] *See* https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/ppp-loan-forgiveness (last accessed Mar. 9, 2023).

[8] *Available at* https://www.sba.gov/document/sba-form-2483-ppp-first-draw-borrower-application-form (last accessed Mar. 9, 2023). The Borrower Application Form went through at least ten iterations. The quoted passages are consistent from the first version (June 12, 2020) to the last (March 18, 2021).

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

> I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

*Id.*

88.     The PPP required borrowers to submit Applications to private commercial lenders for processing and funding. Data from the Application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lenders to the SBA in the course of processing the loans.

89.     According to SBA guidance:

> Providing an accurate calculation of payroll costs is the responsibility of the borrower, and the borrower attests to the accuracy of those calculations on the Borrower Application Form (SBA Form 2483 or SBA Form 2483-C for First Draw PPP Loans and SBA Form 2483-SD or SBA Form 2483-SD-C for Second Draw PPP Loans). Lenders are expected to perform a good faith review, in a reasonable time, of the borrower's calculations and supporting documents concerning average monthly payroll cost. For example, minimal review of calculations based on a payroll report by a recognized third-party payroll processor would be reasonable. In addition, as the PPP Interim Final Rules indicate, lenders may rely on borrower representations, including with respect to amounts required to be excluded from payroll costs.

*See* PPP FAQ, Question 1.

**C.     The False Claims Act**

90.     The FCA, 31 U.S.C. §§ 3729 *et seq.*, establishes liability for any "person" (natural or corporate) who, *inter alia*:

> a.    "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(l)(A); or

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

    b.    "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," *id.* § 3729(a)(l)(B).

91.    "Knowing" is defined by the FCA to include "deliberate ignorance of the truth" or "reckless disregard of the truth." *Id.* § 3729(b)(1).

92.    The FCA defines "claim" to include any request for money that:

is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government—

(I)    provides or has provided any portion of the money or property requested or demanded; or

(II)    will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded....

*Id.* § 3729(b)(2)(A)(ii).

93.    For each false claim or other FCA violation, the statute provides for the assessment of treble damages, plus a civil penalty. *Id.* § 3729(a)(1)(G).[9]

94.    The FCA also contains a *qui tam* mechanism and provides for payment of a percentage of the United States' recovery to the *qui tam* relator, as well as "an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs," in the event of a settlement or a successful trial. *Id.* § 3730(b), (d). "All [such] expenses, fees, and costs must be awarded against the defendant." *Id.*, subsection (d).

## VI.
## FACTUAL ALLEGATIONS

95.    Defendants fraudulently applied for and obtained PPP loans, as follows:

---

[9] 31 U.S.C. § 3729(a)(1) provides for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, 28 U.S.C. § 2461. The minimum per-claim penalty is currently $13,508 and the maximum is $27,018. *See* 88 Fed. Reg. 5776, 5776-81 (Jan. 30, 2023).

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

96. **Denver Center for the Performing Arts**

  a. Denver Center for the Performing Arts is a non-profit organization located in Denver, Colorado.

  b. Denver Center for the Performing Arts's NAICS code is 711190 (Other Performing Arts Companies).

  c. Denver Center for the Performing Arts did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

      i. The size standard for its NAICS code was $30 million at the time of Denver Center for the Performing Arts's PPP loan application. On its IRS Form 990 for the fiscal year ending June 2019, Denver Center for the Performing Arts reported gross receipts of more than $74.7 million.

      ii. On that same Form 990, Denver Center for the Performing Arts reported 836 employees in calendar year 2019 – 336 more than the PPP maximum of 500.

      iii. On that same Form 990, Denver Center for the Performing Arts reported net assets of more than $33.2 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

  d. Denver Center for the Performing Arts obtained a PPP loan for $4,009,517, approved on April 15, 2020. The loan has been forgiven.

  e. On its 2020 PPP application, Denver Center for the Performing Arts falsely certified that it would use the loan to retain 264 jobs.

97. **Colorado Museum of Natural History**

  a. Colorado Museum of Natural History is a non-profit organization located in Denver, Colorado.

  b. Colorado Museum of Natural History's NAICS code is 712110 (Museums).

  c. Colorado Museum of Natural History did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

      i. The size standard for its NAICS code was $30 million at the time of Colorado Museum of Natural History's PPP loan application. On its IRS Form 990 for the fiscal year ending June 2020, Colorado Museum of Natural History reported gross receipts of more than $56.7 million.

      ii. On that same Form 990, Colorado Museum of Natural History reported 667 employees in calendar year 2019 – 167 more than the PPP maximum of 500.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

    iii. On that same Form 990, Colorado Museum of Natural History reported net assets of more than $31.2 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

  d. Colorado Museum of Natural History obtained a PPP loan for $5,087,357, approved on April 7, 2020. The loan has been forgiven.

  e. On its 2020 PPP application, Colorado Museum of Natural History falsely certified that it would use the loan to retain 494 jobs.

98. **Denver Art Museum**

  a. Denver Art Museum is a non-profit organization located in Denver, Colorado.

  b. Denver Art Museum's NAICS code is 712110 (Museums).

  c. Denver Art Museum did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

    i. The size standard for its NAICS code was $30 million at the time of Denver Art Museum's PPP loan application. On its IRS Form 990 for the fiscal year ending December 2019, Denver Art Museum reported gross receipts of more than $50.7 million.

    ii. On that same Form 990, Denver Art Museum reported 636 employees in calendar year 2019 – 136 more than the PPP maximum of 500.

    iii. On that same Form 990, Denver Art Museum reported net assets of more than $185.5 million, in excess of the SBA's "alternative size standard" of no more than $15 million.

  d. Denver Art Museum obtained a PPP loan for $3,282,500, approved on April 5, 2020. The loan has been forgiven.

  e. On its PPP application, Denver Art Museum falsely certified that it would use the loan to retain 390 jobs.

99. **Louisiana College**

  a. Louisiana College is a non-profit organization located in Pineville, Louisiana.

  b. Louisiana College's NAICS code is 611310 (Colleges, Universities and Professional Schools).

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

   c. Louisiana College did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

      i. The size standard for its NAICS code was $30 million at the time of Louisiana College's PPP loan application. On its IRS Form 990 for the period ending September 2021, Louisiana College reported gross receipts of more than $40.8 million.

      ii. On that same Form 990, Louisiana College reported 571 employees for calendar year 2020 – 71 more than the PPP maximum of 500.

      iii. On that same Form 990, Louisiana College reported net assets of more than $83.2 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

   d. Louisiana College obtained a PPP loan for $2,023,645 approved on April 27, 2020. The loan has been forgiven.

   e. On its PPP application, Louisiana College falsely certified that the loan would be used to retain 314 jobs.

100. **Trustees of Boston University**

   a. Trustees of Boston University is a non-profit organization located in Boston, Massachusetts.

   b. Trustees of Boston University's NAICS code is 611310 (Colleges, Universities and Professional Schools).

   c. Trustees of Boston University did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

      i. The size standard for its NAICS code was $30 million at the time of Trustees of Boston University's PPP loan application. On its IRS Form 990 for the fiscal year ending June 2020, Trustees of Boston University. reported gross receipts of more than $2.6 billion.

      ii. On that same Form 990, Trustees of Boston University reported 27,760 employees for calendar year 2019 – 27,260 more than the PPP maximum of 500.

      iii. On that same Form 990, Trustees of Boston University reported net assets of more than $4.1 billion, far in excess of the SBA's "alternative size standard" of no more than $15 million.

   d. Trustees of Boston University obtained a PPP loan for $4,023,730.  The loan was approved on February 14, 2021, and has been forgiven.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

    e. On its PPP application, Trustees of Boston University falsely certified that the loan would be used to retain 232 jobs.

101. **Boston Ballet, Inc. (Second Draw)**

    a. Boston Ballet, Inc. is a non-profit organization located in Boston, Massachusetts.

    b. Boston Ballet, Inc.'s NAICS code is 711120 (Dance Companies).

    c. Boston Ballet, Inc. did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

        i. The size standard for its NAICS code was $12 million at the time of Boston Ballet, Inc.'s PPP second draw loan application. On its IRS Form 990 for the period ending June 2021, Boston Ballet, Inc. reported gross receipts of more than $26.7 million.

        ii. On that same Form 990, Boston Ballet, Inc. reported 490 employees in calendar year 2020 – 190 more than the PPP second draw maximum of 300.

        iii. On that same Form 990, Boston Ballet, Inc. reported net assets of more than $45.7 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

    d. Boston Ballet, Inc. obtained a PPP loan for $2,000,000, approved on March 13, 2021. The loan has been forgiven.

    e. On its PPP application, Boston Ballet, Inc. falsely certified that the loan would be used to retain 172 jobs.

102. **Nichols College**

    a. Nichols College is a non-profit organization located in Dudley, Massachusetts.

    b. Nichols College's NAICS code is 611310 (Colleges, Universities and Professional Schools).

    c. Nichols College did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

        i. The size standard for its NAICS code was $30 million at the time of Nichols College's PPP loan application. On its IRS Form 990 for the period ending June 2021, Nichols College reported gross receipts of more than $67.6 million.

        ii. On that same Form 990, Nichols College reported 826 employees in calendar year 2019 – 326 more than the PPP maximum of 500.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

  iii. On that same Form 990, Nichols College reported net assets of more than $82.3 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

 d. Nichols College obtained a PPP loan for $2,990,800 on April 9, 2020.  The loan has been forgiven.

 e. On its PPP application, Nichols College falsely certified that the loan would be used to retain 431 jobs.

103. **Stephens College**

 a. Stephens College is a non-profit organization located in Columbia, Missouri.

 b. Stephens College's NAICS code is 611310 (Colleges, Universities and Professional Schools).

 c. Stephens College did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

  i. The size standard for its NAICS code was $30 million at the time of Stephens College's PPP loan application. On its IRS Form 990 for the period ending June 2020, the Stephens College reported gross receipts of more than $77.3 million.

  ii. On that same Form 990 Stephens College reported 641 employees in calendar year 2019 – 141 more than the PPP maximum of 500.

  iii. On that same Form 990 Stephens College reported net assets of more than $67 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

 d. Stephens College obtained a PPP loan for $2,097,100, approved on April 5, 2020. The loan has been forgiven.

 e. On its PPP application, Stephens College falsely certified that the loan would be used to retain 436 jobs.

104. **Stephens College (Second Draw)**

 a. Stephens College is a non-profit organization located in Columbia, Missouri.

 b. Stephens College's NAICS code is 611310 (Colleges, Universities and Professional Schools).

 c. Stephens College did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

    i.   The size standard for its NAICS code was $30 million at the time of the Stephens College's PPP second draw loan application. On its IRS Form 990 for the period ending June 2020, Stephens College reported gross receipts of more than $77.3 million.

    ii.  On that same Form 990, Stephens College reported 568 employees – 268 more than the PPP second draw maximum of 300.

    iii. On that same Form 990, Stephens College reported net assets of more than $67 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

  d.  Stephens College obtained a second draw PPP loan for $2,000,000, approved on January, 25, 2021. The loan has been forgiven.

  e.  On its PPP application, Stephens College falsely certified that the loan would be used to retain 237 jobs.

105.  **Westminster College (Second Draw)**

  a.  Westminster College is a non-profit organization located in Fulton, Missouri.

  b.  Westminster College's NAICS code is 611310 (Colleges, Universities and Professional Schools).

  c.  Westminster College did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

    i.   The size standard for its NAICS code was $30 million at the time of Westminster College's PPP second draw loan application. On its IRS Form 990 for the period ending June 2020, Westminster College reported gross receipts of more than $40.6 million.

    ii.  On that same Form 990, Westminster College reported 529 employees – 229 more than the PPP second draw maximum of 300.

    iii. On that same Form 990, Westminster College reported net assets of more than $82.5 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

  d.  Westminster College obtained a PPP second draw loan for $2,000,000 approved on January 23, 2021. The loan has been forgiven.

  e.  On its PPP second draw loan application, Westminster College falsely certified that the loan would be used to retain 261 jobs.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

106. **Saint Louis Symphony Orchestra (Second Draw)**

   a. Saint Louis Symphony Orchestra is a non-profit organization located in St. Louis, Missouri.

   b. Saint Louis Symphony Orchestra's NAICS code is 711130 (Musical Groups and Artists).

   c. Saint Louis Symphony Orchestra did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

   i. The size standard for its NAICS code was $15 million at the time of the Saint Louis Symphony Orchestra's PPP second draw loan application. On its IRS Form 990 for the fiscal year ending July 2020, Saint Louis Symphony Orchestra reported gross receipts of more than $29.2 million.

   ii. On that same Form 990, Saint Louis Symphony Orchestra reported 409 employees in calendar year 2019 – 109 more than the PPP second draw maximum of 300.

   iii. On that same Form 990, Saint Louis Symphony Orchestra reported net assets of more than $69.6 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

   d. Saint Louis Symphony Orchestra obtained a PPP second draw loan for $2,000,000, approved on April 1, 2021. The loan has been forgiven.

   e. On its PPP application, Saint Louis Symphony Orchestra falsely certified that the loan would be used to retain 186 jobs.

107. **Rockhurst University**

   a. Rockhurst University is a non-profit organization located in Kansas City, Missouri.

   b. Rockhurst University's NAICS code is 611310 (Colleges, Universities and Professional Schools).

   c. Rockhurst University did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

   i. The size standard for its NAICS code was $30 million at the time of the Rockhurst University's PPP loan application. On its IRS Form 990 for the fiscal year ending July 2020, Rockhurst University reported gross receipts of more than $97.8 million.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

    ii. On that same Form 990, Rockhurst University reported 1200 employees in calendar year 2019 – 700 more than the PPP maximum of 500.

    iii. On that same Form 990, Rockhurst University reported net assets of more than $94 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

d. Rockhurst University obtained a PPP loan for $5,475,039, approved on April 28, 2020. The loan has been forgiven.

e. On its PPP application, Rockhurst University falsely certified that the loan would be used to retain 488 jobs.

108. **Franciscan University of Steubenville**

a. Franciscan University of Steubenville is a non-profit organization located in Steubenville, Ohio.

b. Franciscan University of Steubenville's NAICS code is 611310 (Colleges, Universities and Professional Schools).

c. Franciscan University of Steubenville did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

    i. The size standard for its NAICS code was $30 million at the time of Franciscan University of Steubenville's PPP loan application. On its IRS Form 990 for the fiscal year ending April 2020, Franciscan University of Steubenville reported gross receipts of more than $114.2 million.

    ii. On that same Form 990, Franciscan University of Steubenville reported 2,140 employees in calendar year 2019 – 1,640 more than the PPP maximum of 500.

    iii. On that same Form 990, Franciscan University of Steubenville reported net assets of more than $158.6 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

d. Franciscan University of Steubenville obtained a PPP loan for $6,650,000, approved on April 27, 2020. The loan has been forgiven.

e. On its PPP application, Franciscan University of Steubenville falsely certified that the loan would be used to retain 498 jobs.

109. **Zoological Society of Cincinnati**

a. Zoological Society of Cincinnati is a non-profit organization located in Cincinnati, Ohio.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

    b. Zoological Society of Cincinnati's NAICS code is 712130 (Zoos and Botanical Gardens).

    c. Zoological Society of Cincinnati did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

        i. The size standard for its NAICS code was $30 million at the time Zoological Society of Cincinnati's PPP loan application. On its IRS Form 990 for the fiscal year ending June 2020 Zoological Society of Cincinnati reported gross receipts of more than $62 million.

        ii. On that same Form 990, Zoological Society of Cincinnati reported 790 employees in calendar year 2019 – 290 more than the PPP maximum of 500.

        iii. On that same Form 990, Zoological Society of Cincinnati reported net assets of more than $158.1 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

    d. Zoological Society of Cincinnati obtained a PPP loan for $4,752,300, approved on April 15, 2020. The loan has been forgiven.

    e. On its PPP application, Zoological Society of Cincinnati falsely certified that the loan would be used to retain 280 jobs.

110. **The Cleveland Institute of Music (Second Draw)**

    a. The Cleveland Institute of Music is a non-profit organization located in Cleveland, Ohio.

    b. The Cleveland Institute of Music's NAICS code is 611310 (Colleges, Universities and Professional Schools).

    c. The Cleveland Institute of Music did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

        i. The size standard for its NAICS code was $30 million at the time of The Cleveland Institute of Music's PPP second draw loan application. On its IRS Form 990 for the fiscal year ending June 2020, The Cleveland Institute of Music reported gross receipts of more than $33.3 million.

        ii. On that same Form 990 The Cleveland Institute of Music reported 457 employees in calendar year 2019 – 157 more than the PPP second draw maximum of 300.

        iii. On that same Form 990, The Cleveland Institute of Music reported net assets of more than $73.8 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

    d. The Cleveland Institute of Music obtained a PPP second draw loan for $2,000,000, approved on April 2, 2021. The loan has been forgiven.

    e. On its PPP application, The Cleveland Institute of Music falsely certified that the loan would be used to retain 256 jobs.

111. **The Musical Arts Association (Second Draw)**

    a. The Musical Arts Association is a non-profit organization located in Cleveland, Ohio.

    b. The Musical Arts Association's NAICS code is 711130 (Musical Groups and Artists).

    c. The Musical Arts Association did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

        i. The size standard for its NAICS code was $12 million at the time of The Musical Arts Association's PPP second draw loan application. On its IRS Form 990 for the fiscal year ending June 2020, The Musical Arts Association reported gross receipts of more than $56.7 million.

        ii. On that same Form 990, The Musical Arts Association reported 623 employees – 323 more than the PPP second draw maximum of 300.

        iii. On that same Form 990, The Musical Arts Association reported net assets of more than $211.4 million, far in excess of the SBA's "alternative size standard" of no more than $12 million.

    d. The Musical Arts Association obtained a second PPP second draw loan for $2,000,000, approved on March 31, 2021. The loan has been forgiven.

    e. On its PPP application, The Musical Arts Association falsely certified that the loan would be used to retain 279 jobs.

112. **Wilmington College**

    a. Wilmington College is a non-profit organization located in Wilmington, Ohio.

    b. Wilmington College's NAICS code is 611310 (Colleges, Universities and Professional Schools).

    c. Wilmington College did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

        i. The size standard for its NAICS code was $30 million at the time of Wilmington College's PPP loan application. On its IRS Form 990 for the

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

fiscal year ending June 2020, Wilmington College reported gross receipts of more than $72.5 million.

    ii. On that same Form 990, Wilmington College reported 750 employees in calendar year 2019 – 250 more than the PPP maximum of 500.

    iii. On that same Form 990, Wilmington College reported net assets of more than $109.3 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

d. Wilmington College obtained a PPP loan for $2,278,400, approved on April 4, 2020. The loan has been forgiven.

e. On its PPP application, Wilmington College falsely certified that the loan would be used to retain 444 jobs.

113. **Hebrew Academy of Cleveland**

a. Hebrew Academy of Cleveland is a non-profit organization located in Cleveland Heights, Ohio.

b. Hebrew Academy of Cleveland's NAICS code is 611110 (Elementary and Secondary Schools).

c. Hebrew Academy of Cleveland did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

    i. The size standard for its NAICS code was $12 million at the time of Hebrew Academy of Cleveland's PPP loan application. On its IRS Form 990 for the fiscal year ending June 2020, Hebrew Academy of Cleveland reported gross receipts of more than $38.2 million.

    ii. On that same Form 990, Hebrew Academy of Cleveland reported 513 employees in calendar year 2019 – 13 more than the PPP maximum of 500.

    iii. On that same Form 990, Hebrew Academy of Cleveland reported net assets of more than $35.4 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

d. Hebrew Academy of Cleveland obtained a PPP loan for $2,037,300 approved on April 15, 2020. The loan has been forgiven.

e. On its PPP application, Hebrew Academy of Cleveland falsely certified that the loan would be used to retain 305 jobs.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

114. **Muskingum University**

   a. Muskingum University is a non-profit organization located in New Concord, Ohio.

   b. Muskingum University's NAICS code is 611310 (Colleges, Universities and Professional Schools).

   c. Muskingum University did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

      i. The size standard for its NAICS code was $30 million at the time of Muskingum University's PPP loan application. On its IRS Form 990 for the fiscal year ending June 2019, Muskingum University reported gross receipts of more than $71.8 million.

      ii. On that same Form 990, Muskingum University reported 1141 employees in calendar year 2019 – 641 more than the PPP maximum of 500.

      iii. On that same Form 990, Muskingum University reported net assets of more than $144.6 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

   d. Muskingum University obtained a PPP loan for $4,233,002, approved on April 7, 2020. The loan has been forgiven.

   e. On its PPP application, Muskingum University falsely certified that the loan would be used to retain 433 jobs.

115. **Playhouse Square Foundation**

   a. Playhouse Square Foundation is a non-profit organization located in Cleveland, Ohio.

   b. Playhouse Square Foundation's NAICS code is 711310 (Promoters of Performing Arts, Sports, and Similar Events with Facilities).

   c. Playhouse Square Foundation did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

      i. The size standard for its NAICS code was $40 million at the time of Playhouse Square Foundation's PPP loan application. On its IRS Form 990 for the fiscal year ending June 2019, Playhouse Square Foundation reported gross receipts of more than $95.4 million.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

    ii. On that same Form 990, Playhouse Square Foundation reported 834 employees in calendar year 2019 – 334 more than the PPP maximum of 500.

    iii. On that same Form 990, Playhouse Square Foundation reported net assets of more than $180.6 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

  d. Playhouse Square Foundation obtained a PPP loan for $4,242,800, approved on April 5, 2020. The loan has been forgiven.

  e. On its PPP application, Playhouse Square Foundation falsely certified that the loan would be used to retain 246 jobs.

116. **Playhouse Square Foundation (Second Draw)**

  a. Playhouse Square Foundation is a non-profit organization located in Cleveland, Ohio.

  b. Playhouse Square Foundation's NAICS code is 711310 (Promoters of Performing Arts, Sports, and Similar Events with Facilities).

  c. Playhouse Square Foundation did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

    i. The size standard for its NAICS code was $40 million at the time of Playhouse Square Foundation's second draw PPP loan application. On its IRS Form 990 for the fiscal year ending September 2020, Playhouse Square Foundation reported gross receipts of more than $95.4 million.

    ii. On that same Form 990, Playhouse Square Foundation reported 491 employees in calendar year 2019 – 191 more than the PPP second draw maximum of 300.

    iii. On that same Form 990, Playhouse Square Foundation reported net assets of more than $193.8 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

  d. Playhouse Square Foundation obtained a PPP second draw loan for $2,000,000 approved April 26, 2021. The loan has not been forgiven.

  e. On its PPP second draw application, Playhouse Square Foundation falsely certified that the loan would be used to retain 246 jobs.

117. **Austin College**

    a.  Austin College is a non-profit organization located in Sherman, Texas.

    b.  Austin College's NAICS code is 611310 (Colleges, Universities and Professional Schools).

    c.  Austin College did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

        i.  The size standard for its NAICS code was $30 million at the time of the Austin College's PPP loan application. On its IRS Form 990 for the fiscal year ending July 2020, Austin College reported gross receipts of more than $87.4 million.

        ii.  On that same Form 990, Austin College reported 1024 employees in calendar year 2019 – 524 more than the PPP maximum of 500.

        iii.  On that same Form 990, Austin College reported net assets of more than $235.2 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

    d.  Austin College obtained a PPP loan for $4,571,100, approved on April 6, 2020. The loan has been forgiven.

    e.  On its PPP application, Austin College falsely certified that the loan would be used to retain 388 jobs.

118. **Fort Worth Symphony Orchestra Association (Second Draw)**

    a.  Fort Worth Symphony Orchestra Association is a non-profit organization located in Kansas City, Missouri.

    b.  Fort Worth Symphony Orchestra Association's NAICS code is 711130 (Musical Groups and Artists).

    c.  Fort Worth Symphony Orchestra Association did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

        i.  The size standard for its NAICS code was $12 million at the time of the Fort Worth Symphony Orchestra Association's PPP second draw loan application. On its IRS Form 990 for the fiscal year ending July 2020, Fort Worth

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

Symphony Orchestra Association reported gross receipts of more than $15.2 million.

    ii. On that same Form 990, Fort Worth Symphony Orchestra Association reported 310 employees in calendar year 2019 – 10 more than the PPP second draw maximum of 300.

    iii. On that same Form 990, Fort Worth Symphony Orchestra Association reported net assets of more than $37.7 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

d. Fort Worth Symphony Orchestra Association obtained a PPP second draw loan for $1,598,324, approved on April 28, 2020. The loan has been forgiven.

e. On its PPP application, Fort Worth Symphony Orchestra Association falsely certified that the loan would be used to retain 154 jobs.

119. **Lionheart Childrens Academy (Second Draw)**

a. Lionheart Childrens Academy is a non-profit organization located in Bedford, Texas.

b. Lionheart Childrens Academy's NAICS code is 624410 (Child Day Care Services).

c. Lionheart Childrens Academy did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

    i. The size standard for its NAICS code was $8 million at the time of Lionheart Childrens Academy's PPP second draw loan application. On its IRS Form 990 for the fiscal year ending June 2020, Lionheart Childrens Academy reported gross receipts of more than $17.1 million.

    ii. On that same Form 990, Lionheart Childrens Academy reported 508 employees in calendar year 2019 – 8 more than the PPP maximum of 500.

    iii. On that same Form 990, Lionheart Childrens Academy reported net assets of more than $3.9 million.

d. Lionheart Childrens Academy obtained a PPP second draw loan for $1,426,223, approved on January 26, 2021. The loan has been forgiven.

e. On its PPP application, Lionheart Childrens Academy falsely certified that the loan would be used to retain 267 jobs.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

120.  **Dallas Symphony Association, Inc. (Second Draw)**

    a.  Dallas Symphony Association, Inc. is a non-profit organization located in Dallas, Texas.

    b.  Dallas Symphony Association, Inc.'s NAICS code is 711130 (Musical Groups and Artists).

    c.  Dallas Symphony Association, Inc. did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

        i.  The size standard for its NAICS code was $12 million at the time of Dallas Symphony Association, Inc.'s PPP second draw loan application. On its IRS Form 990 for the fiscal year ending June 2020, Dallas Symphony Association, Inc. reported gross receipts of more than $29.7 million.

        ii.  On that same Form 990, Dallas Symphony Association, Inc. reported 378 employees in calendar year 2019 – 78 more than the PPP second draw maximum of 300.

        iii.  On that same Form 990, Dallas Symphony Association, Inc.  reported net assets of more than $7.1 million.

    d.  Dallas Symphony Association, Inc. obtained a PPP second draw loan for $2,000,000, approved on March 12, 2021. The loan has been forgiven.

    e.  On its PPP application, Dallas Symphony Association, Inc. falsely certified that the loan would be used to retain 237 jobs.

121.  **Houston Symphony Society (Second Draw)**

    a.  Houston Symphony Society is a non-profit organization located in Houston, Texas.

    b.  Houston Symphony Society's NAICS code is 711130 (Musical Groups and Artists).

    c.  Houston Symphony Society did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

        i.  The size standard for its NAICS code was $12 million at the time of Houston Symphony Society's PPP second draw loan application. On its IRS Form 990 for the fiscal year ending June 2020, Houston Symphony Society reported gross receipts of more than $27.7 million.

        ii.  On that same Form 990, Houston Symphony Society reported 394 employees in calendar year 2019 – 94 more than the PPP maximum of 300.

    iii. On that same Form 990, Houston Symphony Society reported negative net assets of more than -$16.1 million.

d. Houston Symphony Society obtained a PPP second draw loan for $2,000,000, approved on March 20, 2021. The loan has been forgiven.

e. On its PPP application, Houston Symphony Society falsely certified that the loan would be used to retain 174 jobs.

122. **Houston Baptist University**

a. Houston Baptist University is a non-profit organization located in Houston, Texas.

b. Houston Baptist University NAICS code is 611310 (Colleges, Universities and Professional Schools).

c. Houston Baptist University did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

    i. The size standard for its NAICS code was $30 million at the time of Houston Baptist University's PPP loan application. On its IRS Form 990 for the fiscal year ending June 2020, Houston Baptist University reported gross receipts of more than $125.7 million.

    ii. On that same Form 990, Houston Baptist University reported 1243 employees in calendar year 2019 – 743 more than the PPP maximum of 500.

    iii. On that same Form 990, Houston Baptist University reported net assets of more than $190.1 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

d. Houston Baptist University obtained a PPP loan for $6,800,000, approved on April 27, 2020. The loan has been forgiven.

e. On its PPP application, Houston Baptist University falsely certified that the loan would be used to retain 485 jobs.

123. **East Texas Baptist University**

a. East Texas Baptist University is a non-profit organization located in Marshall, Texas.

b. East Texas Baptist University NAICS code is 611310 (Colleges, Universities and Professional Schools).

c. East Texas Baptist University did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

    i. The size standard for its NAICS code was $30 million at the time of East Texas Baptist University's PPP loan application. On its IRS Form 990 for the fiscal year ending June 2020, East Texas Baptist University reported gross receipts of more than $65.5 million.

    ii. On that same Form 990, East Texas Baptist University reported 928 employees in calendar year 2019 – 428 more than the PPP maximum of 500.

    iii. On that same Form 990, East Texas Baptist University reported net assets of more than $118.4 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

d. East Texas Baptist University obtained a PPP loan for $3,145,262, approved on April 14, 2020. The loan has been forgiven.

e. On its PPP application, East Texas Baptist University falsely certified that the loan would be used to retain 362 jobs.

124. **Parker University**

a. Parker University is a non-profit organization located in Dallas, Texas.

b. Parker University's NAICS code is 611310 (Colleges, Universities and Professional Schools).

c. Parker University did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

    i. The size standard for its NAICS code was $30 million at the time of Parker University's PPP loan application. On its IRS Form 990 for the fiscal year ending June 2020, Parker University reported gross receipts of more than $52.6 million.

    ii. On that same Form 990, Parker University reported 536 employees in calendar year 2019 – 36 more than the PPP maximum of 500.

    iii. On that same Form 990, Parker University College reported net assets of more than $85.6 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

d. Parker University obtained a PPP loan for $4,503,811, approved on May 1, 2020. The loan has been forgiven.

e. On its PPP application, Parker University falsely certified that the loan would be used to retain 401 jobs.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

125. **Dallas Theological Seminary**

    a. Dallas Theological Seminary in Dallas, Texas is a non-profit organization located in Dallas, Texas.

    b. Dallas Theological Seminary NAICS code is 611310 (Colleges, Universities and Professional Schools).

    c. Dallas Theological Seminary did not qualify as a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. § 632:

        i. The size standard for its NAICS code was $30 million at the time of Dallas Theological Seminary's PPP loan application. On its IRS Form 990 for the fiscal year ending June 2020, Dallas Theological Seminary reported gross receipts of more than $52.6 million.

        ii. On that same Form 990, Dallas Theological Seminary reported 656 employees in calendar year 2019 – 156 more than the PPP maximum of 500.

        iii. On that same Form 990, Dallas Theological Seminary reported net assets of more than $77.2 million, far in excess of the SBA's "alternative size standard" of no more than $15 million.

    d. Dallas Theological Seminary obtained a PPP loan for $4,600,600, approved on April 7, 2020. The loan has been forgiven.

    e. On its PPP application, Dallas Theological Seminary falsely certified that the loan would be used to retain 466 jobs.

**COUNT I**
**VIOLATION OF THE FALSE CLAIMS ACT:**
**PRESENTATION OF FALSE CLAIMS**

126. Relator repeats and realleges each of the preceding paragraphs as if fully set forth herein.

127. As explained in those paragraphs, Defendants knowingly presented or caused to be presented false claims in the form of PPP loan applications and requests for forgiveness.

128. All Defendants falsified their headcounts to stay under the PPP limit of 500, when in fact their headcounts exceeded 500 – making them ineligible to receive a PPP loan.

129. All Defendants knew or should have known that they were ineligible for a PPP loan, because their revenues exceeded the size standards for their NAICS codes, meaning they

were not "small business concerns" as defined in section 3 of the Small Business Act, 15 U.S.C. § 632, and so were ineligible for PPP loans.

130. All Defendants knew or should have known they were ineligible for a PPP loan because their assets exceeded the SBA's "alternative size standard."

131. All Defendants' PPP loan applications were also legally false because they contained or incorporated false certifications as to their truthfulness, accuracy, and compliance with all applicable laws, regulations, and program instructions for payment.

132. The misrepresentations were material to decisions by Defendants' lenders to fund the PPP loans and by the SBA to approve and forgive those loans. Defendants' lenders would not have funded the loans, and the SBA would not have approved or forgiven the loans, had they known of the falsity of the applications.

133. The loans were made to advance the government's interest in supporting small businesses during the COVID-19 pandemic, and Defendants' lenders were paid for the loans, with interest. Defendants' loan and forgiveness applications were therefore claims on the government for purposes of the FCA.

134. Accordingly, Defendants' knowing presentations of false or fraudulent loan applications to their lenders were violations of 31 U.S.C. § 3729(a)(l)(A).

135. By virtue of the false and fraudulent claims that Defendants presented or caused to be presented, the United States suffered damages in an amount to be determined at trial, and is entitled to treble the amount of those damages, plus civil penalties of not less than $13,508 and up to $27,018 for each violation.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

## COUNT II
### VIOLATION OF THE FALSE CLAIMS ACT:
### MAKING OR USING FALSE RECORD OR STATEMENT

136.     Relator repeats and realleges each of the preceding paragraphs as if fully set forth herein.

137.     As explained in those paragraphs, Defendants knowingly made, used, or caused to be made or used, false records or statements material to the false or fraudulent PPP loan applications at issue, in violation of 31 U.S.C. § 3729(a)(1)(B).

138.     The false records or statements include the fraudulent PPP loan and forgiveness applications that Defendants submitted.

139.     The making and use of these false records and statements were material to decisions by Defendants' lenders to fund the PPP loans and by the SBA to approve and forgive the loans. The lenders would not have funded the loans, and the SBA would not have approved or forgiven the loans, had they known of the falsity of the records and statements.

140.     The loans were made to advance the government's interest in supporting small businesses during the COVID-19 pandemic, and Defendants' lenders were paid for the loans, with interest. Defendants' loan and forgiveness applications were therefore claims on the government for purposes of the FCA.

141.     Accordingly, Defendants' making and use of false or fraudulent records and statements were violations of 31 U.S.C. § 3729(a)(l)(B).

142.     By virtue of Defendants' making and use of these false or fraudulent records and statements, the United States suffered damages in an amount to be determined at trial, and is entitled to treble the amount of those damages, plus civil penalties of not less than $13,508 and up to $27,018 for each violation.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

## PRAYER FOR RELIEF

**WHEREFORE**, Relator respectfully requests that this Court enter judgment in her favor

and that of the United States and against Defendants, granting the following on all Counts:

A.      Judgment against each Defendant and in favor of the United States, in an amount equal to the damages the United States has sustained due to each Defendant's actions, trebled, plus a civil penalty for each violation of 31 U.S.C. § 3729(a)(l)(A) and (B), pursuant to 31 U.S.C. § 3729(a), as adjusted by operation of the federal Civil Penalties Inflation Adjustment Act of 1990;

B.      The maximum award to Relator allowed, along with her attorney fees and expenses and other costs of this action, pursuant to 31 U.S.C. § 3730(d); and

C.      Awards to the United States and Relator for pre- and post-judgment interest at the rates permitted by law; and

D.      Such other and further relief as this Court may deem to be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Relator demands trial by

jury on all questions of fact raised by the Complaint.

Dated: October 9, 2023

Respectfully submitted,

*/s/ Thomas F. Wieder*
Thomas F. Wieder (P33228)
2445 Newport Rd.
Ann Arbor, MI 48103
(734) 994-6647 (phone)
(734) 994-6647 (fax)
*wiedert@aol.com*

*Attorney for Relator Patricia Lesko*